Matthew P. Vafidis (State Bar No. 103578)
HOLLAND & KNIGHT LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Telephone: (415) 743-6900
Facsimile: (415) 743-6910
Email: matthew.vafidis@hklaw.com

Christopher R. Nolan (*pro hac vice* application pending)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Facsimile (212) 395-9010
Email: chris.nolan@hklaw.com

Andrew S. Chamberlin (admitted *pro hac vice*)
Dixie T. Wells (admitted *pro hac vice*)
ELLIS & WINTERS LLP
300 N. Greene Street, Suite 800
Greensboro, NC 27401
Telephone: (336) 217-4195
Email: andrew.chamberlin@elliswinters.com
       dixie.wells@elliswinters.com

Attorneys for Defendant FLUENCE ENERGY, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BBC CHARTERING CARRIERS GmbH & CO. KG,<br>　　　　Plaintiff,<br>v.<br>FLUENCE ENERGY, LLC, SCHENKER, INC., and SCHENKER DEUTSCHLAND AG;<br>　　　　Defendants,<br>v.<br>FLUENCE ENERGY, GmbH,<br>　　　　Third-Party Defendant. | Case No.: 21-cv-02014-BEN-JLB<br><br>IN ADMIRALTY<br><br>**FLUENCE ENERGY, LLC'S ANSWER TO COMPLAINT; AND COUNTERCLAIMS** |

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

Defendant Fluence Energy, LLC ("FLUENCE"), through its counsel, hereby responds to the Complaint of Plaintiff BBC CHARTERING CARRIERS GmbH & CO. KG ("BBC") as follows:

I. Paragraph I states BBC's characterization of its Complaint, and as such, no response is required. To the extent a response is required, denied.

II. Admitted.

III. The allegations of Paragraph III are not directed towards FLUENCE, and as such, no response is required. To the extent a response is required, denied for lack of sufficient information to form a belief as to the truth or falsity thereof.

IV. The allegations of Paragraph IV are not directed towards FLUENCE, and as such, no response is required. To the extent a response is required, denied for lack of knowledge or information sufficient to form a belief about the truth of the allegation.

V. The allegations of Paragraph V are not directed towards FLUENCE, and as such, no response is required. To the extent a response is required, denied for lack of knowledge or information sufficient to form a belief about the truth of the allegation.

VI. It is admitted that FLUENCE is a domestic entity organized and existing under the laws of Delaware. It is also admitted that FLUENCE shipped certain goods from Hai Phong, Vietnam, to San Diego, California aboard the BBC FINLAND. Except as admitted herein, denied.

VII. The allegations of Paragraph VII are not directed towards FLUENCE, and as such, no response is required. To the extent a response is required, denied.

VIII. The allegations of Paragraph VIII are not directed towards FLUENCE, and as such, no response is required. To the extent a response is required, denied.

IX. It is admitted that the BBC FINLAND is engaged in the carriage of goods by sea for hire. It is further admitted that the BBC FINLAND was engaged to

carry a shipment of only FLUENCE's cargo for the voyage at issue. Except as admitted herein, denied.

X. The allegations of Paragraph X state a legal conclusion to which no response is required. To the extent a response is required, denied.

XI. It is admitted that FLUENCE's cargo was loaded onto the BBC FINLAND on or about April 15, 2021. Except as admitted herein, denied.

XII. It is admitted that FLUENCE's cargo was damaged during the voyage on the BBC FINLAND. Except as admitted herein, denied for lack of knowledge or information sufficient to form a belief about the truth of the allegation.

XIII. It is admitted that the terms and conditions of any bill of lading and/or booking note speak for themselves. Except as admitted herein, denied.

XIV. It is admitted that the terms and conditions of any bill of lading speak for themselves. Except as admitted herein, denied.

XV. Denied.

XVI. It is admitted that FLUENCE is an interested party. Except as admitted herein, denied.

XVII. Denied.

XVIII. Denied

XIX. Denied.

Any allegations not expressly admitted herein are denied, including the seven separately referenced allegations contained in the PRAYER FOR RELIEF. FLUENCE specifically denies that BBC is entitled to the relief requested in the PRAYER FOR RELIEF.

## AFFIRMATIVE DEFENSES

1. BBC fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

2. The carriage of FLUENCE's cargo aboard the BBC FINLAND was subject to the terms and conditions of the SCHENKER*ocean* Non-Negotiable SEA

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

WAYBILL for Combined Transport as described more fully in the counterclaim. The loss of and/or damage to FLUENCE's cargo wase caused in whole or in part by BBC's negligent and/or willful breaches of the aforesaid agreement.

3. The limitations of liability contained within the Carriage of Goods by Sea Act, Pub. L. No. 521, 49 Stat. 1207 (1936), reprinted in 46 U.S.C. §30701 note 1 (COGSA), do not apply to fundamental breaches. FLUENCE (i) did not have a fair opportunity to declare higher value in that the aforesaid agreement includes a space on the face marked "Declared Cargo Value" but it does not include any proper additional reference to the opportunity to avoid the $500 package limitation by declaring a higher value and (ii) the damages proven to have been sustained by FLUENCE's cargo were sustained as the result of the BBC FINLAND unreasonably deviating from the contracted for or customary manner of carriage and stowage such that BBC must lose the benefit of the statutory exemptions from liability and limitation on damages within the meaning of section 4 of COGSA.

4. In reference to BBC's "alternative" prayers for relief, prior to and at all times referenced in BBC's pleading, BBC failed to exercise due diligence to make the BBC FINLAND seaworthy. The BBC FINLAND was at all relevant times not fit to undertake the service in which she was engaged. The losses, damages and/or charges and expenses suffered by or in connection with FLUENCE's cargo were caused in whole or in part by BBC's failure to exercise due diligence to make the BBC FINLAND seaworthy at the commencement of the voyage.

5. The losses, damages and/or charges and expenses suffered by or in connection with FLUENCE's cargo, as well as the incident alleged in the pleading and its *sequellae*, were caused in whole or in part by the fault, design or neglect, or want of care of BBC, and/or the BBC FINLAND, and/or those in charge of the BBC FINLAND, and/or persons for whom BBC are responsible.

6. BBC is not entitled to exoneration from or limitation of liability in any form by reason of the fact that such damages and losses, if any, were occasioned by

1. various faults, breaches of contract, breaches of warranty, negligence, and unseaworthiness all within BBC's privity and knowledge, and further that BBC, is not a proper party entitled to exoneration from or limitation of liability.

7. The losses, damages and/or charges and expenses suffered by or in connection with FLUENCE's cargo, as well as the casualty alleged in the pleading and its *sequellae*, resulted from causes within the privity and knowledge of BBC, and/or their officers, directors, managers, supervisors, superintendents and/or such persons whose privity and knowledge are imputable to BBC.

8. BBC's post-incident conduct created separate, additional damages that are not subject to the COGSA limitations of liability.

## COUNTERCLAIM

Defendant FLUENCE ENERGY, LLC ("FLUENCE"), by and through its undersigned counsel, for its counterclaim against BBC CHARTERING CARRIERS GmbH & CO. KG (BBC), alleges as follows:

## NATURE OF THE ACTION

1. FLUENCE brings this admiralty action for the material breach of a maritime contract by BBC. The contract of carriage between FLUENCE and BBC requires that the M/V BBC FINLAND (IMO no. 9593684) (BBC FINLAND or the Vessel) undertake the safe carriage of cargo belonging to FLUENCE, aboard the Vessel on a voyage between Hai Phong, Vietnam and San Diego, California (the Voyage), for delivery at San Diego to FLUENCE, as the cargo owner and consignee. During the Voyage, while the Vessel was underway at sea, FLUENCE's cargo was damaged, in breach of the terms of the contract of carriage. This action asserts FLUENCE's maritime claim against BBC for breach of said maritime contract.

//
//
//
//

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

## JURISDICTION AND VENUE

2. This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1333, and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

3. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391.

4. BBC is within the jurisdiction of this Court. BBC time-chartered a vessel to carry FLUENCE's cargo to California.

## THE PARTIES

5. At all material times, FLUENCE was and still is a Delaware limited liability company duly formed, and existing, under the laws of Delaware. FLUENCE is a world-leading global energy storage technology and services provider. FLUENCE provides grid-scale, industrial-strength energy storage by lithium batteries, referred to as Gen6 Cubes (Cubes). FLUENCE's Cubes are modular, factory-built, standardized storage systems that deliver safe, scalable, cost-effective systems which are built to customer specifications and configurations in Vietnam, assembled into Cubes and packed into containers three Cubes at a time, and then transshipped by vessel to U.S. customers and end users.

6. FLUENCE alleges upon information and belief that BBC is a foreign entity organized and existing under the laws of a foreign nation, with its principal offices in Leer, Germany. BBC is engaged in the business of operating vessels for the carriage of goods by sea.

7. FLUENCE alleges upon information and belief that at all material times, BBC time-chartered the Vessel, a 24,964 deadweight ton Antigua & Barbuda-flagged general cargo ship built in 2012, 161.33 meters in length, bearing IMO Number 9593684.

//
//

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

# FACTS MATERIAL TO ALL CAUSES OF ACTION

## Overview

8. This is a case of marine cargo damage and short delivery resulting from breach or other fault by BBC of its contractual duties under the maritime contract of carriage, affreightment, bailment and other contract, as identified in Exhibit 1. *See* Exhibit 1, an exemplar Sea Waybill for one of the damaged containers. All of the waybills related to this incident are in the same form and the Sea Waybills are defined more fully at paragraph 19, *infra*.

9. The Cargo, as identified in the Sea Waybills, consisted of 318 containers holding Cubes, 13 containers holding accessory equipment, and 2 containers holding CRTs as identified in the said Sea Waybills.

10. The Cargo was loaded in apparent good order and condition at the port of Hai Phong, Vietnam on or about April 15, 2021, for carriage to San Diego, California. During the Voyage, part of the Cargo was damaged, and the Vessel diverted to Aomori, Japan to assess the extent of the loss of and/or damage to the Cargo.

## Loading of the Cubes into Containers

11. On or about June 24, 2020, FLUENCE, as Purchaser, entered into a Master Supply Agreement (MSA) with Ace Engineering & Co. Ltd. (ACE) to manufacture Cubes by supplying various items of equipment, parts, materials, supplies and services, as identified therein.

12. FLUENCE alleges on information and belief that, once the Cubes were assembled, three Cubes were loaded, secured, and packed into 40-foot high cube (HC) containers for trans-Pacific shipment, pursuant to a manual provided by FLUENCE with the proper packing and loading procedures. Other HC Containers were packed and loaded with accessory equipment, rather than Cubes.

13. FLUENCE alleges on information and belief that ACE Vietnam, which on information and belief is an affiliate of ACE, was responsible for loading and

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

packing containers; ACE Vietnam placed a seal or lock on the containers once the Cubes were loaded into the containers.

### Title to the Cargo and the Maritime Contract of Carriage

14. On February 25, 2021, FLUENCE, as the Cargo owner, contracted with DB Schenker (DBS) to book the loading, stowage, and carriage of the Cargo aboard the M/V BBC FINLAND and prepare the necessary shipping contracts with the Vessel interests.

15. Between February and April 2021, the Cargo was transported in 333 containers by ACE from their Vietnam factory to the Hai Phong, Vietnam port, by trucks pursuant to delineated responsibilities in the MSA with FLUENCE. The containers were then offloaded from the trucks at the said port.

16. FLUENCE alleges on information and belief that the Cargo was delivered to the load port in apparent good order and condition, awaiting arrival of and loading aboard the BBC FINLAND.

17. Under the terms of the contract of carriage, DBS agreed to ship the Cargo under Free on Board (FOB) transportation or INCOTERMS from the port of Hai Phong, Vietnam, to the Delivered-at-place (DAP) of four different end-customer project locations in California.

18. Pursuant to the FOB terms, title to and risk of loss of the Cargo passed to FLUENCE when the Cargo was loaded onto the M/V BBC FINLAND at the port of departure (Hai Phong, Vietnam).

19. On or about April 15, 2021, DBS entered into four written maritime contracts titled "SCHENKERocean Non-Negotiable SEA WAYBILL for Combined Transport", VNHAN0000031155, VNHAN0000031169, VNHAN0000031567, and VNHAN0000031568, the Sea Waybills, pursuant to which DBS agreed to accept and safely load and carry 333 40-foot HC containers containing 954 FLUENCE Cubes, 13 40-foot HC containers containing accessories, and 2 40-foot HC Containers containing CRTs (the "Cargo") aboard the M/V BBC FINLAND in Hai

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA  94111
Tel: 415.743.6900
Fax: 415.743.6910

Phong, Vietnam and to discharge the Cargo at San Diego, California on Voyage number 1312001.

20.   After the Voyage and after litigation had begun regarding these issues, FLUENCE was provided with a copy of a March 1, 2021 Booking Note between BBC and DB Schenker, and its April 1, 2021 addendum.  The Sea Waybills described above remained the operative documents.

21.   The only cargo carried onboard the M/V BBC FINLAND for that Voyage was the Cargo. Pursuant to its obligations as a carrier, M/V BBC FINLAND had the non-delegable duty to safely load, stow, carry, and deliver the Cargo in good order and condition to San Diego in accordance with the terms and conditions of the Sea Waybills.

## The Voyage and Loss and Damage to the Cargo

22.   On April 15, 2021, the M/V BBC FINLAND, loaded with the Cargo, departed Hai Phong, Vietnam bound for San Diego, California.

23.   The total value of the Cargo on the Vessel was $109,677,308.50.

24.   FLUENCE alleges on information and belief that on April 28, 2021, the crew or Master aboard M/V BBC FINLAND reported that the Vessel was experiencing rolling, pitching, and pounding with persistent heavy sea spray over the deck, in response to which the Vessel reported making various course and speed changes to minimize heavy rolling, pitching, and pounding.

25.   Because of a subsequent report of smoke in the cargo holds, the Vessel initially diverted towards Petropavlovsk–Kamchatskiy, Russia, and then made way to Aomori, Japan to assess any damage to the Cargo and Vessel in port.

26.   The Vessel arrived in Aomori, Japan on May 8, 2021. Upon arrival at the pier, the Vessel's interests and surveyors, along with the Japanese Coast Guard and local fire department as a safety precaution when opening the hatches, attended the Vessel to investigate the scope of damage to the Cargo.

//

27. Soon thereafter, the Vessel began discharging the weather deck containers in order to open the hatch covers and inspect the Cargo in the holds.

28. All containers were discharged from the holds for inspection on the pier in order to assess any damage to the containers and the potential need for salvage, repacking, and continued transshipment.

29. FLUENCE alleges on information and belief that the attending surveyors indicated that a cause of the collapsed and damaged containers in the Vessel's holds was due to improper usage of twist locks and insufficient lashing to the containers, in particular as full-auto type twist locks were set incorrectly in an "upside down" position when the Cargo was loaded by the Vessel interests.

30. Empty 20-foot containers were not utilized in the stowage in hold No. 2, nor were pressure elements used, both of which were required by the Cargo Securing Manual. BBC has no explanation as to why these requirements were not followed.

31. The stowage failures described above constitute unreasonable deviations and subjected FLUENCE's Cargo to unreasonable and unjustifiable risk.

32. FLUENCE did not anticipate these unreasonable and unjustified risk, as evidenced by the fact that proper stowage, including empty 20-foot containers and the proper pressure elements were required by the Cargo Securing Manual.

33. As a result of the onboard survey, inspection, and investigation, an estimated 179 containers containing FLUENCE's Cargo suffered some damage, with an estimated 87 containers deemed by surveyors to be damaged to an extent that they were not safe for reloading on the Vessel and transshipment to San Diego.

34. Consequently, 84 40-foot HC containers with a total 252 Cubes, and three (3) 40-foot HC containers with accessories, remained in Japan for further inspection and possible salvage.

35. Owing to limited port capacity at Aomori to conduct the necessary surveys of the damaged containers and their contents, including unpacking,

9

FLUENCE ENERGY, LLC'S ANSWER AND COUNTERCLAIMS                    CASE 21-CV-02014-BEN-JLB

inspecting, and repacking the Cubes, the 87 damaged containers were transferred by barge to Hakodate, Japan in several voyage segments for further inspection and transshipment or salvage depending on the results of those inspections.

36. On June 16, 2021, FLUENCE paid ACE in full for all the Cargo pursuant to the prevailing purchase orders.

37. On June 18, 2021, the Vessel departed Aomori, Japan to continue the Voyage to San Diego, but the Vessel was only partly loaded with 246 containers and short the number of containers contracted for in the Sea Waybills.

38. BBC failed to complete the Voyage and carry the remainder of FLUENCE's Cargo, as required under the contract of carriage under the Sea Waybills.

39. The Cargo in those 246 containers was inspected in San Diego.

40. FLUENCE has continued to incur significant costs associated with storage, inspections, repairs, and disposal of Cubes that were damaged beyond salvage in Japan. FLUENCE has also incurred costs in producing new cubes to meet FLUENCE's contractual obligations to projects that had expected to receive the original Cubes.

41. BBC's conduct exposed FLUENCE's Cargo to the events that occurred during the Voyage that ultimately damaged the Cargo. BBC's actions constituted unreasonable deviations that exposed the Cargo to unreasonable and unjustified risk.

42. Even after the Cargo was damaged, BBC continued to intentionally deviate from the reasonable expectations of the parties.

43. BBC failed to transport all of FLUENCE's cargo to the United States in a timely manner. BBC's conduct constituted unreasonable and intentional deviations that exposed FLUENCE's Cargo to unreasonable and unjustifiable risks.

//
//
//

# FIRST CAUSE OF ACTION

## (Breach of Maritime Contract of Carriage)

44. FLUENCE incorporates paragraphs 1 through 43 of this Counterclaim as if they were fully set forth and realleged herein.

45. FLUENCE is the owner and consignee of the Cargo.

46. FLUENCE is entitled to bring this action on its own behalf and as agent and trustee on behalf of any and all other parties interested in the Cargo, as their respective interests may ultimately appear.

47. The Cargo was delivered in good order and condition and properly prepared for the Voyage.

48. BBC agreed, under a maritime contract of carriage, to carry, handle, and act as the bailees of the Cargo, and to discharge the Cargo at San Diego, California in good order and condition.

49. Under U.S. maritime law, BBC is liable to perform its obligations under the Sea Waybills.

50. BBC failed to deliver the Cargo at San Diego, California as agreed under the aforesaid contract of carriage. To the contrary, BBC delivered parts of the Cargo in a damaged condition, failed to deliver other parts of the Cargo, and delivered other Cargo late.

51. The failures and omissions of BBC, as aforesaid and as specified herein, in connection with the non-performance and defective performance of its obligations, constitute material breaches of the Sea Waybills.

52. Under U.S. maritime law, the failures and omissions of BBC, as aforesaid and as specified herein, in connection with the non-performance and defective performance of its obligations, give rise to an admiralty claim by FLUENCE against BBC.

//

//

53. As a result of the material breaches of the Sea Waybills as aforesaid, FLUENCE has suffered loss and damage, including, but not limited to, the following:

    a. losses, which are continuing, in performance of its obligations under the Sea Waybills and reliance on the performance of BBC of the terms and conditions of the aforesaid;

    b. damages, including but not limited to, damages owed to third parties on account of BBC's failure, in breach of the Sea Waybills, to provide the Cargo in accordance with the production schedules agreed with said third parties; and

    c. further and additional loss and damage as yet unascertained.

## SECOND CAUSE OF ACTION
## (Breach of Bailment)

54. FLUENCE incorporates paragraphs 1 through 43 of this Counterclaim, as if fully set forth and realleged herein.

55. As a carrier, handler, or bailee with respect to the Cargo, BBC owed FLUENCE a duty of care to preserve, not damage, and not lose the Cargo.

56. Under the circumstances alleged, BBC breached its duty as carrier, handler, or bailee with respect to the Cargo.

57. BBC's conduct unreasonably deviated from the parties' expectations and exposed FLUENCE'S Cargo to unreasonable and unjustified risk.

58. The consequence of such negligence and/or willful breaches is that, as alleged herein, BBC failed to take the necessary steps to transport FLUENCE's Cargo without damage and part of the Cargo was discharged damaged during the Voyage.

59. Under U.S. maritime law, the negligence, failures, and omissions of BBC, as aforesaid and as specified herein, give rise to a claim by FLUENCE against BBC.

60. As a direct and proximate result of the conduct as aforesaid of BBC, FLUENCE has been damaged.

61. In addition to that loss, FLUENCE has incurred attorney's fees and other recovery expenses in amounts as yet unascertained.

## THIRD CAUSE OF ACTION

### (Breach of Duties and Obligations)

62. FLUENCE incorporates paragraphs 1 through 43 of this Counterclaim, as if fully set forth and realleged herein.

63. BBC owed FLUENCE a duty of care to deliver the Cargo undamaged to the United States.

64. Under the circumstances alleged, BBC breached its duty as carrier, handler, or bailee with respect to the Cargo.

65. BBC intentionally refused to carry the remainder of FLUENCE's Cargo as originally contemplated by the parties.

66. The consequence of such action is that, as alleged herein, even after the events that occurred at sea that damaged the Cargo, BBC failed to take steps to remediate the damages and transport FLUENCE's Cargo as originally agreed.

67. BBC's intentional failures and omissions, as aforesaid and as specified herein, give rise to a claim by FLUENCE against BBC.

68. As a direct and proximate result of the conduct as aforesaid of BBC, FLUENCE has been damaged.

69. FLUENCE continues to incur damages as a result of its inability to deliver the Cubes at the contracted dates and times because of BBC's unreasonable deviation through its conduct, failures, and omissions.

70. FLUENCE has incurred attorney's fees and other recovery expenses in amounts as yet unascertained.

//
//

## PRAYER FOR RELIEF

**WHEREFORE**, having answered BBC's Complaint and setting forth its counterclaim, FLUENCE prays for judgment and relief against BBC as follows:

1. That this Counterclaim be deemed good and sufficient;

2. That after due proceedings, there be judgment entered in favor of Defendant FLUENCE, and against BBC, casting BBC liable for all damages to FLUENCE, or such other amount representing the full measure of FLUENCE's damages as determined at trial, with prejudgment interest, attorney's fees, and all costs of these proceedings.

Respectfully submitted,

Dated: December 22, 2021       HOLLAND & KNIGHT LLP

*[signature]*

_____

Matthew P. Vafidis
Christopher R. Nolan
(*pro hac vice* application pending)


ELLIS & WINTERS LLP

/s/ Andrew S. Chamberlin
_____

Andrew S. Chamberlin,
(Admitted *pro hac vice*)
Dixie T. Wells,
(Admitted *pro hac vice*)

Attorneys for Defendant

FLUENCE ENERGY, LLC

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

14

FLUENCE ENERGY, LLC'S ANSWER AND COUNTERCLAIMS        CASE 21-CV-02014-BEN-JLB

EXHIBIT "1"

# SCHENKERocean

**Non-Negotiable SEA WAYBILL for Combined Transport**

**NON-NEGOTIABLE SEA WAYBILL**

| (1) Shipper/Exporter | (4) Waybill No. |
|---|---|
| ATTN: ▮ * | VNHAN0000031169 |
| | (5) Reference Nos.: |
| | 70490014005600 / HANOE210003447 |

| (2) Consignee | (6) |
|---|---|
| FLUENCE ENERGY LLC,<br>4601 N FAIRFAX DRIVE, SUITE 600<br>ARLINGTON, VA, UNITED STATES<br>ATTN: VALENTINA DIMKOVIC<br>** | SCHENKER DEUTSCHLAND AG<br>GLOBAL PROJECTS & IND. SOLUTIONS<br>WANHEIMER STRASSE 61<br>40472 DUSSELDORF<br>GERMANY |

| (3) Notify Party | (7) For Delivery of Goods apply to: |
|---|---|
| ▮ | SCHENKER INC<br>(GLOBAL PROJ/IND SOLUTIONS)<br>18851 KENSWICK DR<br>HUMBLE, TX 77338<br>UNITED STATES OF AMERICA |

| (8) Vessel/Voyage (see clause 16.1 of the SCHENKERocean Bill of Lading terms) | (11) Place of Receipt (Applicable only when document used as Combined Transport B/L) |
|---|---|
| BBC FINLAND / 1312001 | |

| (9) Port of Loading | (10) Port of Discharge | (12) Final Destination (Applicable only when document used as Combined Transport B/L) |
|---|---|---|
| HAI PHONG | SAN DIEGO | |

Below Particulars Furnished by Shipper – carrier not responsible – For Merchant's use only and not Part of the Bill of Lading Contract

| (13) Kind of packages; description of goods; marks and Numbers; Container No./Seal No. | (14) Gross Weight | (15) Measurement |
|---|---|---|
| TDRU8290103    1 40HQ HC    SLAC = 3 PACKAGES<br>SEAL: A28313734 | 23600.000 KGS<br>52029.094 LBS | 43.750 CBM<br>1545.017 CFT |
| CONTAINERS AS SHIPPERS OWN    CUBE GEN6 CATL LD UL RAL9003<br><br>**DANGEROUS GOODS UN3536,**<br>**LITHIUM BATTERIES INSTALLED IN CARGO TRANSPORT**<br>**UNIT,**<br>**(LITHIUM BATTERIES INSTALLED IN CARGO TRANSPORT**<br>**UNIT),**<br>**CLASS 9,**<br>**EMERGENCY CONTACT:** ▮ **, TEL.: TEL:** ▮ | | |
| LHXU9181416    1 40HQ HC    SLAC = 3 PACKAGES<br>SEAL: A28313467 | 23660.000 KGS<br>52161.371 LBS | 43.750 CBM<br>1545.017 CFT |

FREIGHT COLLECT

(DETAILS AS PER ATTACHMENT)

Above particulars as declared by Shipper, but without responsibility of or representation by the Carrier (see clause 8).

| (16) Carrier's Receipt (see clauses 1 and 8 of the SCHENKERocean Bill of Lading terms)<br>Total number of containers or packages **179**<br>received by Carrier: | The particulars given above as stated by the merchant and the weight, measure, quantity, marks, contents and value of the Goods considered unknown by the Carrier. RECEIVED by the Carrier from the shipper, as far as ascertained by reasonable means of checking in apparent good order and condition unless otherwise stated herein, the total number of quantity of Containers or other packages or units indicated in the box above entitled "Carrier's Receipt". This contract is subject to the terms and conditions, including the law & jurisdiction clause and limitation of liability & declared value clauses, of the current SCHENKERocean Bill of Lading, which are applicable with logical amendments (mutatis mutandis). To the extent necessary to enable the Consignee to sue and be sued under this contract, the Shipper on entering into this contract does not so on his own behalf and as agent for and on behalf of the Consignee and warrants that he has authority to do so. The Shipper shall be entitled to change the Consignee at any time before delivery of the goods provided he gives the Carrier reasonable notice in writing. Delivery will be made to the Consignee or his authorized agent on production of reasonable proof of indemnity (and, in the case of an agent, reasonable proof of authority) without production of this Waybill. The Carrier shall be under no liability whatsoever for misdelivery unless caused by the Carrier's negligence. |
|---|---|
| (17) Freight and Charges | (18) Prepaid | (19) Collect | |

| (20) Declared Cargo Value (see clause 7.3 of the SCHENKERocean Bill of Lading terms): |
|---|
| NO VALUE DECLARED |

| (22) Place and Date of issue of Waybill: |
|---|
| DUSSELDORF 15-APR-2021 |

| (23) Issued as agents for SCHENKERocean as Carrier by: |
|---|
| SCHENKER DEUTSCHLAND AG |

NON-NEGOTIABLE SEA WAYBILL

Sea Waybill Attachment: 70490014005600

| | |
|---|---|
| B/L No.: VNHAN0000031169 | Attachment 1 of 43     Date: 15-Apr-2021 |
| STT No.: 70490014005600 | Port of Loading:   HAI PHONG |
| Vessel : BBC FINLAND | Port of Discharge: SAN DIEGO |
| Voyage : 1312001 | |

Kind of packages; description of goods; marks and Numbers; Container No./Seal No.      Gross Weight      Measurement

CONTAINERS AS SHIPPERS OWN     CUBE GEN6 CATL LD UL RAL9003

DANGEROUS GOODS UN3536,
LITHIUM BATTERIES INSTALLED IN CARGO TRANSPORT UNIT,
(LITHIUM BATTERIES INSTALLED IN CARGO TRANSPORT UNIT),
CLASS 9,
EMERGENCY CONTACT: ▮▮▮▮ , TEL.: TEL: ▮▮▮▮

TDRU8640860      1 40HQ HC      SLAC = 3 PACKAGES      23660.000 KGS      43.750 CBM
SEAL: A28313473                                         52161.371 LBS     1545.017 CFT

CONTAINERS AS SHIPPERS OWN     CUBE GEN6 CATL LD UL RAL9003

DANGEROUS GOODS UN3536,
LITHIUM BATTERIES INSTALLED IN CARGO TRANSPORT UNIT,
(LITHIUM BATTERIES INSTALLED IN CARGO TRANSPORT UNIT),
CLASS 9,
EMERGENCY CONTACT: ▮▮▮▮ , TEL.: TEL: ▮▮▮▮

MSCU7074969      1 40HQ HC      SLAC = 3 PACKAGES      23660.000 KGS      43.750 CBM
SEAL: A28313756                                         52161.371 LBS     1545.017 CFT

CONTAINERS AS SHIPPERS OWN     CUBE GEN6 CATL LD UL RAL9003

DANGEROUS GOODS UN3536,
LITHIUM BATTERIES INSTALLED IN CARGO TRANSPORT UNIT,
(LITHIUM BATTERIES INSTALLED IN CARGO TRANSPORT UNIT),
CLASS 9,
EMERGENCY CONTACT: ▮▮▮▮ , TEL.: TEL: ▮▮▮▮

TDRU8429971      1 40HQ HC      SLAC = 3 PACKAGES      23660.000 KGS      43.750 CBM
SEAL: A28313480                                         52161.371 LBS     1545.017 CFT

CONTAINERS AS SHIPPERS OWN     CUBE GEN6 CATL LD UL RAL9003

DANGEROUS GOODS UN3536,
LITHIUM BATTERIES INSTALLED IN CARGO TRANSPORT UNIT,
(LITHIUM BATTERIES INSTALLED IN CARGO TRANSPORT UNIT),
CLASS 9,
EMERGENCY CONTACT: ▮▮▮▮ , TEL.: TEL: ▮▮▮▮

TCKU9831979      1 40HQ HC      SLAC = 3 PACKAGES      23660.000 KGS      43.750 CBM
SEAL: A28313757                                         52161.371 LBS     1545.017 CFT

CONTAINERS AS SHIPPERS OWN     CUBE GEN6 CATL LD UL RAL9003

| (22) Place and Date of issue of B/L: | (23) Issued as agent for SCHENKERocean as Carrier by: |
|---|---|
| DUSSELDORF 15-APR-2021 | SCHENKER DEUTSCHLAND AG |

Case 3:21-cv-02014-BEN-JLB   Document 61   Filed 12/22/21   PageID.70   Page 19 of 20







## CONDITIONS OF CARRIAGE

**1. Paramount Clause**

(a) The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in Article 1(b) of the Hague Rules, Hague Visby Rules and the US COGSA. However, this Waybill is a non-negotiable document. It is not a bill of lading and no bill of lading will be issued. However, it is agreed that the Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment which would have been applicable in this Waybill if it were a bill of lading shall apply to this Waybill. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply in exactly the same way.

(b) In countries where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall also apply to this Waybill.

(c) It is agreed that whenever the Hague Rules and the Hague-Visby Rules or statutes incorporating same use the words "Bill of Lading" they shall be read and interpreted as meaning "Waybill".

**2. Incorporation**

(a) Unless otherwise set out on the face and back thereof, the Containers and Goods contained therein shall be carried and the contract evidenced by this Waybill subject to:

(i) The terms and conditions provided for in the Carrier's applicable Bill of Lading, and the terms and conditions of the Carrier's applicable tariff, both of which are deemed to be incorporated in this Waybill and which may be inspected or a copy obtained at the Carrier's offices or at those of his authorised agents and every reference therein to the words "Bill(s) of Lading" shall be read and construed as a reference to the words "non-negotiable Waybill(s)" and the terms and conditions thereof shall be read and construed accordingly; and

(ii) The CMI Uniform Rules for Sea Waybills ("the Rules") excluding only Rule 4 (iii), which are available at the Carrier's offices or at those of his authorized agents.

(b) In the event of any inconsistency between terms and conditions mentioned under (i) above or otherwise set out in this Waybill and the Rules, then the terms and conditions mentioned under (i) above or otherwise set out in this Waybill shall prevail.

(c) The Shipper accepts the terms and conditions on its behalf and on behalf of the Consignee and owner of the Goods.



**3. Delivery**

(a) Unless otherwise specified in this Waybill delivery of Goods will be made only to the Consignee named on the face hereof or its authorised agents, on production of proof of identity. In presenting this Waybill or by requesting delivery of the Goods, the Consignee undertakes all liabilities of the Shipper without prejudice to the Shipper's own liability.

(b) In respect of Goods for Carriage to Port(s) of Discharge or Place(s) of Receipt in the United States of America, clause 3(a) shall not apply. The procedure relating to the release of Goods applicable to any particular port or place in the United States of America is set out in Carrier's published tariff. Provided that the said procedure(s) is/are followed, Carrier shall be deemed to have exercised reasonable care in relation to the release and delivery of Goods, and shall not be liable to Merchant in respect of any claim for misdelivery or wrongful release and/or delivery of the Goods. Merchant expressly acknowledges and accepts that such procedures will or may provide for the delivery of Goods to any person who presents shipment particulars to the terminal. If this sub-clause 3(b) is held invalid or inapplicable in any court of competent jurisdiction, the terms of clause 3(a) shall nevertheless apply.

(c) If the Shipper requires delivery at a place elsewhere than at the Place of Delivery or Place of Receipt as shown on the face hereof and should written instruction accordingly be given by the Shipper to the Carrier or his agents, Carrier may, at its discretion, deliver the Goods at such other place.



(d) If the Consignee requires delivery elsewhere than at the Place of Delivery or the Place of Receipt shown on the face hereof and should written instruction be given reasonably in advance by the Shipper or its agent, Carrier may at its discretion, without any notice to the Shipper deliver Goods at such other place PROVIDED ALWAYS that the right of control has been transferred to the Consignee in accordance with CMI Uniform Rule 6 (ii).



# PROOF OF SERVICE

I, the undersigned, hereby declare that I am over the age of 18 years and not a party to the above-captioned action; that my business address is 50 California Street, Suite 2800, San Francisco, CA 94111. On December 22, 2021, the following document(s) were served:

- **FLUENCE ENERGY, LLC'S ANSWER TO COMPLAINT; AND COUNTERCLAIMS**

on the interested parties in this action addressed as follows:

| Frank C. Brucculeri, Esq.<br>KAYE, ROSE & PARTNERS, LLP<br>723 Palisades Beach Rd., Suite 108<br>Santa Monica, CA 90402 | Chris Tribolet<br>Peacock Piper Tong & Voss LLP<br>1300 Clay Street, Suite 600<br>Oakland, CA 94612 |
|---|---|

☒ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed on the attached Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Holland & Knight LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **(BY ELECTRONIC MAIL)** I caused a true and correct scanned image (.PDF file) copy to be transmitted via the electronic mail transfer system in place at Holland & Knight, LLP, originating from the undersigned at 50 California Street, Suite 2800, San Francisco, CA 94111, to the address(es) indicated above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed December 22, 2021, at San Francisco, California.

*s/Reena Kaur*
Reena Kaur