ALBERT E. PEACOCK III, CASB No. 134094
apeacock@peacockpiper.com
TARA B. VOSS, CASB No. 261967
tvoss@peacockpiper.com
CHRISTOPHER A. TRIBOLET, CASB No. 246192
ctribolet@peacockpiper.com
JULIETTE B. MCCULLOUGH, CASB No. 278929
jmccullough@peacockpiper.com
**PEACOCK PIPER TONG + VOSS LLP**
100 W. Broadway, Suite 610
Long Beach, CA  90802
Telephone: (562) 320-8880
Facsimile: (562) 735-3950

Attorneys for SCHENKER, INC.; SCHENKER
DEUTSCHLAND AG; and SCHENKEROCEAN, LTD.

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BBC CHARTERING CARRIERS GmbH & CO. KG,<br><br>Plaintiff,<br><br>vs.<br><br>FLUENCE ENERGY, LLC, SCHENKER, INC., et al.<br><br>Defendants. | **Case No.** 3:21-cv-02014-BEN-JLB<br><br>IN ADMIRALTY<br><br>**SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF FLUENCE ENERGY GMBH.** |

Schenker Deutschland AG ( "Schenker"), through its counsel, hereby responds to

Counterclaim of Fluence Energy, GmbH ("Fluence") (ECF 62) as follows:

- 1 -

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF
FLUENCE ENERGY GMBH.

## RESPONSES TO THE NUMBERED ALLEGATIONS

1.      It is admitted that this action involves a shipment of goods from Hai Phong, Vietnam to San Diego, California, on the M/V BBC FINLAND.   It is further admitted that there was a contract of carriage.  Except as expressly admitted herein, denied.

2.      Admit.

3.      Admit.

4.      Schenker admits the allegations of the first sentence of Paragraph 4. Except as expressly admitted herein, denied.  The allegation that Schenker arranged to "time charter the Vessel" is specifically denied.

5.      Schenker does not have sufficient knowledge or information to form a belief as to the truth of the allegations, and on this basis denies them.

6.      Admit.

7.      It is admitted that Schenker arranged with BBC Chartering to provide transport by ship.  The allegation that Schenker arranged to "time charter the Vessel" is specifically denied.  The vessel particulars are admitted.

8.      The allegations set forth in the first sentence of paragraph 8 are legal in nature and do not require a response from Schenker.  To the extent an answer to the first sentence is required, the allegation is denied.  Schenker admits that the Sea

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF
FLUENCE ENERGY GMBH.

Waybills are in the same form, but denies all remaining allegations. Except as expressly admitted herein, denied.

9.    Admit.

10.    Admit.

11.    The allegation is denied for lack of sufficient information to form a belief as to the truth or falsity thereof.

12.    Schenker admits that Cubes and accessory equipment were loaded into containers.   Except as expressly admitted, the remainder of the allegation is denied for lack of sufficient information to form a belief as to the truth or falsity thereof.

13.    The allegation is denied for lack of sufficient information to form a belief as to the truth or falsity thereof.

14.    Admit.

15.    The allegation is denied for lack of sufficient information to form a belief as to the truth or falsity thereof.

16.    Admit.

17.    Schenker admits that there was a "contract of carriage."   Except as expressly admitted, the remainder of the allegation is denied.

18.    Paragraph 18 states a legal conclusion to which no response is required. To the extent a response is required, the allegation is denied.

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF
FLUENCE ENERGY GMBH.

19.     Admitted as to name of the waybills, the waybill numbers, the date on the waybills, the name of the vessel, and ports of Hai Phong and San Diego.  Except as specifically admitted, all remaining allegations are denied.

20.     The first sentence in paragraph 20 is admitted.  The second sentence states a legal conclusion, to which no response is required. To the extent a response is required, denied.

21.     The first sentence in paragraph 21 is denied for lack of information sufficient to form a belief as to the truth or falsity thereof.  The second sentence of paragraph 21 states a legal conclusion, to which no response is required.  To the extent a response is required, denied.

22.     Admit.

23.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

24.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

25.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

26.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF
FLUENCE ENERGY GMBH.

27.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

28.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

29.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

30.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

31.     The allegation states a legal conclusion, to which no response is required. To the extent a response is required, denied.

32.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

33.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

34.     Admit.

35.     Admit.

36.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

37.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF FLUENCE ENERGY GMBH.

38.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

39.     Admitted that cargo was inspected in San Diego, however Schenker lacks information sufficient to form a belief as to the truth or falsity of the remainder of the allegation.

40.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

41.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

42.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

43.     Denied.

44.     Schenker hereby incorporates its response to paragraphs 1 through 43.

45.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

46.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

47.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

48.     Denied.

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF
FLUENCE ENERGY GMBH.

49.     This allegation states a legal conclusion to which no response is required. To the extent a response is required, the allegation is denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

54.     Schenker hereby incorporates its response to paragraphs 1 through 53.

55.     This allegation states a legal conclusion to which no response is required. To the extent a response is required, the allegation is denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     This allegation states a legal conclusion to which no response is required. To the extent a response is required, the allegation is denied.

60.     Denied.

61.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

62.     Schenker hereby incorporates its response to paragraphs 1 through 61.

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF
FLUENCE ENERGY GMBH.

63.     This allegation states a legal conclusion to which no response is required. To the extent a response is required, the allegation is denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied that there was an unreasonable deviation.  All remaining allegations are denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

70.     Denied for lack of information sufficient to form a belief as to the truth or falsity of the allegation.

71.     Any allegations not expressly admitted herein are denied, including allegations contained in the Fluence's PRAYER FOR RELIEF.   Schenker specifically denies that Fluence is entitled to the relief requested in the PRAYER FOR RELIEF.

## **AFFIRMATIVE DEFENSES**

1.     Fluence fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

2.     Schenker claims the protections of all defenses under the provisions of the carrier's bills of lading, directly and through its contract with Fluence.

3.      Fluence's claims are governed by the Carriage of Goods by Sea Act ("COGSA"), reprinted in the note to 46 U.S.C. § 30701, (or the Harter Act, 46 U.S.C. §§ 30701 et seq), which provides the exclusive remedies potentially available. Fluence's First Cause of Action ("Breach of Maritime Contract of Carriage"), Second Cause of Action ("Breach of Bailment"), and Third Cause of Action ("Breach of Duties and Obligations"), as assertions of common law or judicially created causes of action, must be dismissed as failing to state claims cognizable pursuant to the statutory regime of COGSA (or the Harter Act).

4.      The contract of carriage was subject to the terms of the carrier's bill of lading.  Schenker is entitled to all defenses, exemptions, and limitations of the Carriage of Goods by Sea Act, note at 46 U.S.C.A 30701, pursuant to incorporation by means of Special Clause B of the bill of lading issued by BBC Chartering, which affirmatively incorporates COGSA, otherwise known as a Himalaya Clause.

5.      Fluence's claims are subject to The Carriage of Goods by Sea Act of the United States, reprinted in the note to 46 U.S.C.A. § 30701.  Section 3(5) of COGSA provides in part "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States … unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading."  The value of the goods described in Fluence's

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF
FLUENCE ENERGY GMBH.

counterclaim was not declared by the shipper.  If there is liability by Schenker, such liability is limited to $500 per package.

6.     Fluence's claims are subject to The Carriage of Goods by Sea Act of the United States, reprinted in the note to 46 U.S.C.A. § 30701.   Section 4(2) of the COGSA provides that the carrier shall not be responsible for loss or damage arising or resulting from any other cause than those specified in said subsection, arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier.   Fluence's goods were carefully loaded, stowed, kept and discharged, and the damage described in the counterclaim, if any occurred, resulted without the actual fault and privity of Schenker and without the fault or neglect of its agents or servants.

7.     Fluence alleges in its counterclaim that "the Vessel reported making various course and speed changes to minimize heavy rolling, pitching, and pounding" and initially diverted to Russia and then Japan.  To the extent such operational decisions caused the alleged damage, which is denied, Section 4(2)(a) of the Carriage of Goods by Sea Act shields Schenker from liability for loss to cargo when such loss results from the negligent navigation or management of the ship.

8.     Fluence's claims are subject to The Carriage of Goods by Sea Act of the United States, reprinted in the note to 46 U.S.C.A. § 30701.   Section 4(2)(b) of COGSA relieves Schenker from liability for fire not caused by the actual fault or

- 10 -

privity of the carrier.   The damage to the goods alleged in Fluence's complaint was caused by fire arising from the fault of others, without fault or privity by Schenker.

9.      During her voyage, the M/V BBC FINLAND was struck by a storm of exceptional ferocity, and mountainous seas and cross-swells.  As a result of the aforesaid storm, there was damage in the number 2 Hold, including fire, overheating, and cargo collapse.  Any resulting loss or damage to the cargo was due to a peril of the sea as hereinbefore described, for which Schenker is not responsible pursuant to section 4(2)(c) of the Carriage of Goods by Sea Act.

10.     The goods shipped by Fluence included lithium batteries and other dangerous goods which overheat or combust due to their inherent nature, including failures by the manufacturers to properly secure and protect batteries within the racks.  Any overheating or combustion and consequential damage to the remaining cargo was due to the negligence of Fluence, its suppliers, and its agents, in failing to properly assemble, store, prepare, or package the goods to prevent their shorting, overheating, combustion, and destruction.  Schenker cannot be responsible for the inherent vice of the goods and, under Section 4(2)(m) of the Carriage of Goods by Sea Act, is not responsible.

11.     The contract mentioned in Fluence's counterclaim was made subject to the provisions of The Carriage of Goods by Sea Act of the United States, reprinted in the note to 46 U.S.C.A. § 30701.  Section 4(2)(n) of COGSA provides in pertinent part

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF FLUENCE ENERGY GMBH.

that neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from insufficiency of packing.   The Cubes described in the counterclaim were secured only with inadequate straps, improperly assembled ratchets, and plywood beneath the Cubes.   The damage described in the counterclaim, if it occurred, was caused by the insufficiency of the packaging to protect the Cubes from the normal incidents of handling and ocean transportation.

12.    The goods shipped by Fluence included lithium batteries, enclosed within the Cubes, and packaged by Fluence within containers.  Inspection of the cargo for latent defects, including loose battery racks, wiring connections, and other failures of assembly and packaging, was not discoverable by due diligence by Schenker.  These latent defects could lead to overheating, smoldering, fire, and the shifting and destruction of the cargo.  Schenker cannot be responsible for such latent of the goods and, under Section 4(2)(p) of the Carriage of Goods by Sea Act, is not responsible.

13.    Fluence's claims are subject to The Carriage of Goods by Sea Act of the United States, reprinted in the note to 46 U.S.C.A. § 30701.   The damage to the goods was caused by a combination of weather, seas, insufficient packaging, defects in the Cargo, and the inherent vice of the dangerous cargo, all of which were without the fault or privity of Schenker.  Schenker cannot be responsible for such damage to goods and, under Section 4(2)(q) of the Carriage of Goods by Sea Act, is not responsible.

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF
FLUENCE ENERGY GMBH.

14.     To the extent that Fluence's claim is based upon an alleged delay in the delivery of the cargo, damage to the cargo, or destruction of the cargo, due to the diversion to Japan where Fluence's dangerous goods were unloaded, Schenker is exempt from liability under The Carriage of Goods by Sea Act. COGSA Section 4(6) provides in pertinent part that if dangerous goods "shall become a danger to the ship or cargo, they may in like manner be landed at any place, or destroyed or rendered innocuous by the carrier without liability on the part of the carrier."

15.     To the extent that Fluence's claim or claims against Schenker are based upon an alleged delay in the delivery of the cargo, Schenker is not liable because delayed delivery is not "damage" under COGSA.

16.     To the extent that Fluence's claim is based upon an alleged delay in the delivery of the cargo due to deviation of the ocean carrier, Schenker is not responsible. Fluence and Schenker contracted that it would be the "carrier's option to deviate from the direct geographical route."

17.     Fluence failed to mitigate any damages alleged in the counterclaim and which may be proven to have been sustained, and Schenker is not liable for those damages that could have been mitigated by reasonable effort but were not.

18.     Schenker fully and properly fulfilled all responsibilities and duties required of it by its contract with Fluence. If any loss or damage is proved to have been sustained to Fluences's goods as alleged, such loss or damage was caused by one or

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF
FLUENCE ENERGY GMBH.

more acts or omissions, or combination thereof, whether negligent or breach of contract, by one or more third parties, for whose acts or omissions Schenker cannot be liable in fact or in law.

19.     Schenker is not liable for any special or consequential damages, which are denied, pursuant to clause 3(b) of BBC Chartering's bill of lading, or at common law, or otherwise.

DATED:  January 14, 2021

ALBERT E. PEACOCK III
TARA B. VOSS
CHRISTOPHER A. TRIBOLET
JULIETTE B. MCCULLOUGH
**PEACOCK PIPER TONG + VOSS, LLP**
Attorneys for SCHENKER, INC.; SCHENKER DEUTSCHLAND AG; and SCHENKEROCEAN, LTD.

- 14 -

SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF FLUENCE ENERGY GMBH.

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF Los Angeles

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is Peacock Piper Tong + Voss LLP, 100 W. Broadway, Suite 610, Long Beach, California 90802.

On January 14, 2022, I served the foregoing documents described as SCHENKER DEUTSCHLAND AG ANSWER TO COUNTERCLAIM OF FLUENCE ENERGY GMBH on the parties in this action as follows:

## SEE SERVICE LIST

BY CM/ECF:  The document was electronically served on the parties to this action via the mandatory United States District Court of California CM/ECF system upon electronic filing of above-described document.

Executed on January 14, 2022 at Larkspur, California.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Christopher A. Tribolet

## PROOF OF SERVICE (SERVICE LIST)

| | |
|---|---|
| **ELLIS & WINTERS LLP**<br>Andrew S. Chamberlin<br>Dixie T. Wells<br>Steven A. Scoggan<br>300 North Greene Street Suite 800<br>Greensboro, NC 27401 | **HOLLAND & KNIGHT LLP**<br>Christopher R. Nolan<br>31 West 52nd Street<br>New York, New York 10019 |
| **HOLLAND & KNIGHT LLP**<br>Matthew P. Vafidis<br>50 California Street, 28th Floor<br>San Francisco, CA 94111 | **KAYE, ROSE & PARTNERS, LLP**<br>Frank C. Brucculeri, Esq.<br>723 Palisades Beach Rd., Suite 108<br>Santa Monica, CA 90402 |
| | |

**PROOF OF SERVICE**